**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| HALLMARK LICENSING, LLC, | Case No. 25-cv-01114 |
| Plaintiff, | **Judge Matthew F. Kennelly** |
| v. | **Magistrate Judge Jeffrey Cole** |
| YANGZHOU LSD ELECTRONICS CO., LTD., et al., | |
| Defendants. | |

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR
<u>SUMMARY JUDGMENT AND AN AWARD OF STATUTORY DAMAGES</u>**

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................................ ii

I. BACKGROUND .................................................................................................................. 1

    A. The Hallmark Brand and Hallmark Products ..................................................................... 1

    B. Defendant's Counterfeit Product ........................................................................................ 3

    C. Procedural History ............................................................................................................. 5

II. PLAINTIFF IS ENTITLED TO SUMMARY JUDGMENT ............................................. 5

    A. Summary Judgment Standard ............................................................................................ 5

    B. Plaintiff Is Entitled to Summary Judgment Against Defendant on Its Trademark Infringement and Counterfeiting Claim .................................................................................. 6

        i. Plaintiff's HALLMARK Trademarks Are Federally Registered and Incontestable ...... 6

        ii. Defendant Used Infringing and Counterfeit Reproductions of the HALLMARK Trademarks ............................................................................................................................ 6

        iii. Defendant's Use of the HALLMARK Trademarks Is Likely to Cause Confusion Among Consumers .............................................................................................................. 7

    C. Plaintiff Is Entitled to Summary Judgment Against Defendant on Its False Designation of Origin Claim ......................................................................................................................... 10

III. PLAINTIFF IS ENTITLED TO A STATUTORY DAMAGES AWARD AGAINST DEFENDANT FOR TRADEMARK COUNTERFEITING ........................................... 10

    A. The Value of the HALLMARK Trademarks and Plaintiff's Enforcement Efforts .......... 11

    B. Defendant's Counterfeiting of the HALLMARK Trademarks Was Willful .................... 12

    C.    Defendant Rendered it Impossible for Plaintiff to Determine the Scope of, or Prove, Actual Damages.................................................................................................................. 13

    D.    Defendant's Wide Exposure Over the Internet Merits Statutory Damages Award .......... 14

    E.    The Statutory Damages Award Must Sufficiently Deter Defendant and Similar Online Sellers................................................................................................................................ 14

IV.    PLAINTIFF IS ENTITLED TO ATTORNEY FEES AND COSTS ............................... 15

V.    CONCLUSION................................................................................................................ 15

**MEMORANDUM**

Pursuant to Fed. R. Civ. P. 56, Plaintiff Hallmark Licensing, LLC ("Plaintiff") submits this Memorandum in Support of its Motion for Summary Judgment on its trademark infringement and counterfeiting claim, its false designation of origin claim, an award of statutory damages on its trademark infringement and counterfeiting claim, and an award of attorney fees and costs against Defendant XIONGDI Co.Ltd (identified as Def. No. 53 on Schedule A to Complaint [1]) ("Defendant").

**I.      BACKGROUND**

**A.      The Hallmark Brand and Hallmark Products**

Hallmark is a world-famous producer of a wide variety of products and services, including greeting cards, entertainment products, clothing, gifts, and related retail store services. [Plaintiff's Local Rule 56.1 Statement of Material Facts in Support of its Motion for Summary Judgment and a Statutory Damages Award ("PSF") 7]. The Hallmark brand has continued to evolve across its portfolio of businesses including through the Hallmark Channel and Hallmark Movies & Mysteries cable television networks. [PSF 8].

The Hallmark Channel, launched in 2001, is known as "a place where it's always Christmas." [PSF 9]. Hallmark produces over thirty made-for-TV Christmas movies each year, which air on the Hallmark Channel and Hallmark Movies & Mysteries and draw in hundreds of millions of unique viewers every year. [PSF 10]. In 2021, Nielsen estimated that more than 80 million people watched at least part of a Hallmark Christmas movie that year. [PSF 11]. In 2023, the Hallmark Christmas movie "A Merry Scottish Christmas" outrated every cable news program on TV the week it premiered. [PSF 12]. In the opinion of The New York Times, Hallmark created "the road map for the modern TV Christmas movie," and The Writers Guild Foundation featured Hallmark Christmas movies in their "TV Format Fundamentals Series." [PSF 13]. Each holiday

1

season, major publications and organizations, from Entertainment Weekly to the United States Chamber of Commerce, publish articles on Hallmark Christmas movies. [PSF 14]. Plaintiff earns more than $350 million in advertising revenue from the Hallmark Christmas movies each year. [PSF 15].

Plaintiff offers for sale and sells a variety of products, including greeting cards, ornaments, mugs, clothing, blankets, and other holiday gift products (the "Hallmark Products"). [PSF 16]. Hallmark Products also include various products associated with Hallmark Christmas movies and the Hallmark Channel generally, such as the examples shown in Figure 1 below. [PSF 17].



*Figure 1*

Hallmark Products have become exceptionally popular, driven by Hallmark's arduous quality standards and innovative designs. [PSF 18]. Among the purchasing public, genuine Hallmark Products are instantly recognizable as such. [PSF 18]. Genuine Hallmark Products are sold through Plaintiff's website, hallmark.com, the official Hallmark Amazon (amazon.com) storefront, and the official Hallmark Keepsake Amazon storefront. [PSF 19-20].

For over seventy-five years, Plaintiff and its predecessors have used the HALLMARK mark in connection with its products and services. [PSF 21]. Plaintiff has registered many of its trademarks with the U.S. Patent and Trademark Office on the Principal Register, including, but not limited to, the below registrations (the "HALLMARK Trademarks"). [PSF 22].

| REGISTRATION NO. | TRADEMARK |
|---|---|
| 5,033,265 | HALLMARK |
| 2,469,522 | Hallmark |

The above U.S. registrations for the HALLMARK Trademarks are valid, subsisting, in full force and effect, and incontestable pursuant to 15 U.S.C. § 1065. [PSF 23]. The HALLMARK Trademarks have been used exclusively and continuously by Plaintiff and have never been abandoned. [PSF 24]. The HALLMARK Trademarks are used to advertise, promote, and market Hallmark Products. [PSF 25]. Hallmark Products typically include one or more HALLMARK Trademarks. [PSF 25]. Plaintiff has spent substantial time, money, and other resources in developing, advertising, and otherwise promoting the HALLMARK Trademarks and Hallmark Products. [PSF 26].

B.     **Defendant's Counterfeit Product**

Defendant is a Chinese entity that operates an e-commerce store on Walmart.com ("Walmart") under the seller alias identified as XIONGDI Co.Ltd. [PSF 2]. Defendant advertised, offered for sale, and sold a mug using the HALLMARK Trademarks (the "Counterfeit Product") on its Walmart store. [PSF 27-28]. The Counterfeit Product is offered for sale and sold for $12.26. [PSF 27].

Specifically, as shown in Figure 2 below[1], the Counterfeit Product and the product listing page for the Counterfeit Product include infringing and counterfeit reproductions of the HALLMARK Trademarks. Figure 2; [PSF 28].

---

[1] The infringing and counterfeit reproductions of the HALLMARK Trademarks are circled in blue.

3



*Figure 2*

Plaintiff reviewed the product listing for the Counterfeit Product, and determined Defendant infringed Plaintiff's HALLMARK Trademarks. [PSF 29-30, 33]. Plaintiff has not licensed or authorized Defendant to use the HALLMARK Trademarks, and Defendant is not an authorized retailer of genuine Hallmark Products. [PSF 37].

On November 20, 2024, Plaintiff's investigators ordered the Counterfeit Product from Defendant, entered an Illinois address (which was Plaintiff's counsel's address) as the shipping address, and paid for the Counterfeit Product. [PSF 34]. Plaintiff's investigators received an order confirmation (Order No. 2000126-40353016) and an e-mail of the estimated delivery date. [PSF 35]. On November 22, 2024, Plaintiff's investigators received an email confirming the Counterfeit Product had shipped to the Illinois Address and on December 10, 2024, Plaintiff's investigators received an email that the shipping was delayed. [PSF 36].

During discovery, Defendant produced screenshots indicating that between April 16, 2022, and April 22, 2025, Defendant sold and accepted money for 11 units of Counterfeit Product. [PSF 39-41]. However, Defendant did not indicate whether that was the totality of Defendant's sales of

4

the Counterfeit Product. [PSF 41]. The screenshot also did not indicate the identity or location of the purchaser, the shipping address, or the date of purchase. [PSF 41]. Further, the screenshots were only indicative of sales of one product (ID 5211187078); Defendant did not complete a search for other products that infringe the HALLMARK Trademarks or provide Plaintiff a list of its other products that would allow Plaintiff to investigate whether those products infringe the HALLMARK Trademarks. [PSF 42]. Defendant also did not provide an accounting for funds restrained in its Walmart account. [PSF 45].

### C. Procedural History

Plaintiff filed this action on January 31, 2025 [1]. On February 6, 2025, the Court entered a Temporary Restraining Order ("TRO")[2] that, among other things, enjoined Defendant from infringing the HALLMARK Trademarks, and ordered Walmart to provide expedited discovery regarding Defendant's contact information and sales and restrain funds in Defendant's Walmart account. [23] at ¶¶ 1-2, 4-5. On February 13, 2025, pursuant to the TRO [23], Walmart provided Defendant's contact information, that the balance of Defendant's Walmart account was $19,160.33, and confirmed that the account had been restrained. [PSF 38].

## II. PLAINTIFF IS ENTITLED TO SUMMARY JUDGMENT

### A. Summary Judgment Standard

A district "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The moving party bears the initial burden of demonstrating that these requirements have been met; it may discharge this responsibility by showing 'that there is an absence of evidence to support the non-moving party's case.'" *Wheeler v. Lawson*, 539 F.3d 629, 634 (7th Cir. 2008).

---

[2] The Court entered a Preliminary Injunction extending the relief granted in the TRO for the pendency of this action. [41].

5

B. **Plaintiff Is Entitled to Summary Judgment Against Defendant on Its Trademark Infringement and Counterfeiting Claim**

A defendant is liable for trademark infringement and counterfeiting under the Lanham Act when it, "without the consent of the registrant[,] use[s] in commerce, any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods ... on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive." 15 U.S.C. § 1114(1)(a). To prevail on a trademark infringement claim, "a plaintiff must be able to show (1) that its mark is protectable, and (2) that the defendant's use of that mark is likely to cause confusion among consumers." *Phx. Entm't, LLC v. Rumsey*, 829 F.3d 817, 822 (7th Cir. 2016) (internal citation omitted).

i. <u>Plaintiff's HALLMARK Trademarks Are Federally Registered and Incontestable</u>

The HALLMARK Trademarks are registered with the United States Patent and Trademark Office on the Principal Register. [PSF 22-23]. The registrations for the HALLMARK Trademarks are valid, subsisting, in full force and effect, and incontestable pursuant to 15 U.S.C. § 1065. [PSF 23]. Incontestable status under 15 U.S.C. § 1065 means the registrations for the HALLMARK Trademarks are conclusive evidence of the registration and validity of the HALLMARK Trademarks, Plaintiff's ownership of the HALLMARK Trademarks, and Plaintiff's exclusive right to use the HALLMARK Trademarks in commerce. 15 U.S.C. §§ 1115(b); 1065. *See Park 'N Fly, Inc. v. Dollar Park and Fly, Inc.*, 469 U.S. 189, 83 L. Ed. 2d 582, 105 S. Ct. 658 (1985). As such, Plaintiff satisfies the first element of its claim.

ii. <u>Defendant Used Infringing and Counterfeit Reproductions of the HALLMARK Trademarks</u>

Trademark infringement amounts to counterfeiting when an infringer's violation consists of: (1) using a "spurious mark which is identical with, or substantially indistinguishable from, a

6

registered mark,"[3] (2) in connection with the same goods referenced in the registration certificate. *See* 15 U.S.C. §§ 1116(d)(1)(B), 1117(b)-(c), 1127. Here, Defendant advertised, offered for sale, and sold a mug using marks that were identical to, or substantially indistinguishable from, the HALLMARK Trademarks. Figure 2, *supra*. [PSF 27-28]. Mugs are the same goods referenced in the HALLMARK Trademarks registration certificates. *See* [PSF 22]. As such, Defendant's trademark infringement amounts to counterfeiting within the meaning of 15 U.S.C. § 1127.

        iii. <u>Defendant's Use of the HALLMARK Trademarks Is Likely to Cause Confusion Among Consumers</u>

As to the second element of Plaintiff's trademark infringement claim, the question of whether a defendant's use will cause a likelihood of confusion "may be resolved on summary judgment 'if the evidence is so one-sided that there can be no doubt about how the question should be answered.'" *CAE, Inc. v. Clean Air Eng'g, Inc.*, 267 F.3d 660, 677 (7th Cir. 2001).

Under Seventh Circuit precedent, when "one produces counterfeit goods in an apparent attempt to capitalize upon the popularity of, and demand for, another's product, there is a presumption of a likelihood of confusion." *Microsoft Corp. v. Rechanik*, 249 F. App'x 476, 479 (7th Cir. 2007). Defendant used marks that were identical to, or indistinguishable from, the HALLMARK Trademarks to capitalize on the popularity and success of the Hallmark Christmas movies and Hallmark Products, which Plaintiff sells in connection with the Hallmark Christmas movies. Figure 1, Figure 2, *supra*. [PSF 27-28]. As such, there is a presumption that Defendant's unauthorized use of the HALLMARK Trademarks is likely to cause confusion among consumers.

The result is the same when considered in light of the Seventh Circuit's seven factors to determine whether there is a likelihood of confusion, which include: (1) the similarity between the

---

[3] *See* Joint Statement on Trademark Counterfeiting Legislation, 130 Cong. Rec. H12076, H12078 ("Spurious" means "not genuine or authentic").

7

marks in appearance and suggestion; (2) the similarity of the products; (3) the area and manner of concurrent use; (4) the degree and care likely to be exercised by consumers; (5) the strength of the plaintiff's mark; (6) any actual confusion; and, (7) the intent of the defendant to "palm off" its products as that of another. *AutoZone, Inc. v. Strick*, 543 F.3d 923, 929 (7th Cir. 2008).

Here, Defendant advertised, offered for sale, and sold its Counterfeit Product (a Hallmark Christmas movie-themed mug) using marks identical to the HALLMARK Trademarks. Figure 1, Figure 2, *supra*; [PSF 27-28]. Consumers who encounter Defendant's Counterfeit Product are likely to believe that it is associated with the Hallmark brand and are further likely to believe that the Counterfeit Products are genuine Hallmark Products. *See AutoZone,* F.3d at 929; *see Sorensen v. WD-40 Co.*, 792 F.3d 712, 728-29 (7th Cir. 2015). Thus, the first and second factors favor Plaintiff.

Regarding the third factor, courts consider "whether the parties use the same channels of commerce, target the same general audience, or use similar marketing procedures." *Sorensen*, 792 F.3d at 730. As to the fourth factor, the general rule is that "the more widely accessible and inexpensive the products . . . the more likely that consumers will exercise a lesser degree of care and discrimination in their purchases." *AutoZone*, 543 F.3d at 933 (quoting *CAE*, F.3d at 683). Here, Defendant sells its Counterfeit Product through Walmart, an online retailer, and Plaintiff sells Hallmark Products, including mugs, through online retailers including Amazon. [PSF 19]. The Counterfeit Product is offered for sale and sold for $13.68, and a substantially similar, genuine Hallmark mug is sold on Amazon for $16.99. [PSF 20, 27]. Because both Plaintiff and Defendant sell their products through online retailers for a low price, the third and fourth factors also favor Plaintiff. *See Entm't One*, 384 F. Supp. 3d at 951 (finding that "[b]ecause [Plaintiff's and

8

Defendant's] products were widely accessible for anyone to purchase on eBay, and sold at a low price point, this factor weighs in Plaintiff's favor").

As to the fifth factor, the HALLMARK Trademarks are famous marks and have been used in commerce in the United States, and all over the world, for over seventy-five years. *See* [PSF 21]. Plaintiff has expended substantial time, money, and other resources in developing, advertising and otherwise promoting the HALLMARK Trademarks. [PSF 26]. The Hallmark Christmas movies have received extensive unsolicited publicity and earn Plaintiff millions of dollars in revenue annually. [PSF 13-15]. *See Coach, Inc. v. Treasure Box, Inc.*, No. 3:11 CV 468, 2013 U.S. Dist. LEXIS 76607, at *19 (N.D. Ind. May 31, 2013). Accordingly, fifth factor weighs in Plaintiff's favor.

Plaintiff does not need to prove actual consumer confusion; rather it only needs to show a likelihood of confusion exists, particularly given the compelling evidence that the Defendant is attempting to "palm off" its products as being genuine Hallmark Products. *CAE*, 267 F.3d at 685. Further, the Court may infer Defendant's intent to confuse consumers "from the similarity of the marks where the senior mark has attained great notoriety." *AutoZone*, 543 F.3d at 934. Here, Defendant's intent to "palm off" its Counterfeit Product as a genuine Hallmark Christmas mug is obvious; the Counterfeit Product plainly references Hallmark Christmas movies, is targeted to consumers who watch Hallmark Christmas movies, and uses marks identical to the HALLMARK Trademarks.

In sum, the undisputed material facts are "so one-sided that there can be no doubt" that all of the likelihood of confusion factors favor Plaintiff. *CAE,* 267 F.3d at 677. Therefore, Plaintiff is entitled to summary judgment on its trademark infringement and counterfeiting claim as a matter of law.

## C. Plaintiff Is Entitled to Summary Judgment Against Defendant on Its False Designation of Origin Claim

The test for trademark infringement under 15 U.S.C. § 1114(1) and 15 U.S.C. § 1125(a) are the same. *CAE,* 267 F.3d at 673-74. Since Plaintiff has established it is entitled to summary judgment on its trademark infringement and counterfeiting claim (Count I), it is also entitled to summary judgment on its false designation of origin claim (Count II).

## III. PLAINTIFF IS ENTITLED TO A STATUTORY DAMAGES AWARD AGAINST DEFENDANT FOR TRADEMARK COUNTERFEITING

Plaintiff seeks to recover an award of statutory damages of $75,000 as authorized by 15 U.S.C. § 1117(c) for Defendant's advertising, offering for sale, and sale of Counterfeit Products.[4] A plaintiff in a counterfeiting case may elect to receive "not less than $1,000 or more than $200,000 per counterfeit mark," and up to $2,000,000 per counterfeit mark when the counterfeiting is willful, "per type of goods or services sold, offered for sale, or distributed, as the court considers just." 15 U.S.C. § 1117(c)(1), (c)(2). The amount sought is reasonable in light of the relevant factors, including: (1) the value of the HALLMARK Trademarks and Plaintiff's efforts to promote and enforce the HALLMARK Trademarks, (2) Defendant's willfulness, (3) Plaintiff's inability to prove actual damages, (4) Defendant's wide exposure over the Internet; (5) deterrence of Defendant; and (6) deterrence of similar online e-commerce sellers.

Statutory damages under 15 U.S.C. § 1117(c) are a "matter within the sole province of the court." *Tobinick v. Scripps Clinic Med. Group*, 81 Fed. Appx. 677, 679 (9th Cir. 2003). Courts interpreting 15 U.S.C. § 1117(c) have analogized case law applying the statutory damage provision of the Copyright Act contained in 17 U.S.C. § 504(c). *See Lorillard Tobacco Co. v. S&M Cent. Serv. Corp.,* 2004 U.S. Dist. LEXIS 22563, at *10 (N.D. Ill. Nov. 5, 2004). The Seventh Circuit's

---

[4] Pursuant to 17 U.S.C. § 1117(d), Plaintiff may, "at any time before final judgment is rendered" elect to recover an award of statutory damages, instead of actual damages and profits.

10

standard for awarding statutory damages for copyright infringement under 17 U.S.C. § 504(c) is articulated in *Chi-Boy Music v. Charlie Club*, 930 F.2d 1224, 1229 (7th Cir. 1991). Under the *Chi-Boy* standard, a court awarding statutory damages "enjoys wide discretion." *Id*. In computing the award amount, a court may consider factors such as "the difficulty or impossibility of proving actual damages, the circumstances of the infringement, and the efficacy of the damages as a deterrent." *Id*. Courts in this District have also considered the significant value of a plaintiff's brand and the efforts taken to protect, promote, and enhance that brand in determining the appropriate dollar figure for the award. *Lorillard Tobacco Co.*, 2004 U.S. Dist. LEXIS 22563, at *16.

An award of statutory damages serves dual interests in that it is remedial in nature but also intended to protect an important public interest. *Sands, Taylor & Wood v. Quaker Oats Co.*, 34 F.3d 1340, 1347-48 (7th Cir. 1994). Thus, courts have looked beyond restitution of profit and restoration of injury to award damages, holding that deterrence of future infringement by the Defendant and others situated like him is an important factor. *Lorillard Tobacco Co. v. J.J. Shell Food Mart, Inc.*, 2005 U.S. Dist. LEXIS 26626, at *16 (N.D. Ill. Oct. 27, 2005). Courts have also held that damages awards limited to lost profits would have little to no deterrent effect on future violations – an infringer "must fear more than just having to turn over his ill-gotten gains to the rightful owners." *See Lorillard Tobacco Co.,* 2004 U.S. Dist. LEXIS 22563, at *17. Given the broader economic losses and harm to the job market caused by infringement, coupled with the possible dangers to consumers who are tricked into purchasing low quality, infringing products over the Internet, it is important to both penalize defendant and deter future violations. *Id.* at *18.

### A. The Value of the HALLMARK Trademarks and Plaintiff's Enforcement Efforts

In determining an appropriate damage award, this Court should be guided by the *Lorillard* case and consider the "significant value of [the Hallmark] brand and the efforts taken to protect,

11

promote, and enhance that brand." *Lorillard Tobacco Co.*, 2004 U.S. Dist. LEXIS 22563, at *16. Plaintiff has expended substantial time, money, and other resources in developing, advertising, and otherwise promoting the HALLMARK Trademarks and Hallmark Products. [PSF 26]. Plaintiff has a worldwide anti-counterfeiting program to protect the Hallmark brand and actively enforces its trademark rights, including filing trademark infringement and counterfeiting lawsuits. [PSF 31-32]. The requested statutory damages award should be given favorable consideration in view of the value of the HALLMARK Trademarks, and the extensive steps taken by Plaintiff to protect, promote and enhance the HALLMARK Trademarks and the Hallmark brand. *See Monster Energy Co. v. Meng Chun Jing*, No. 15 C 277, 2015 U.S. Dist. LEXIS 86956, at *11 (N.D. Ill. July 6, 2015).

## B. Defendant's Counterfeiting of the HALLMARK Trademarks Was Willful

Defendant's counterfeiting was willful and, therefore, at a minimum, warrants the requested statutory damages award. *See H-D U.S.A., LLC v. Guangzhou Tomas Crafts Co.,* No. 16-cv-10096, 2017 U.S. Dist. LEXIS 207613, at *13 (N.D. Ill. Dec. 18, 2017). "Infringement is willful when the infringer knows that it is infringing or acts 'in reckless disregard'" of that possibility." *H-D U.S.A., LLC v. SunFrog, LLC*, 311 F. Supp. 3d 1000, 1045 (E.D. Wis. 2018) (citing *Wildlife Exp. Corp. v. Carol Wright Sales, Inc.*, 18 F.3d 502, 511, 514 (7th Cir. 1994)). Knowledge or reckless disregard need not be proven directly but can be inferred. *Id.*

The Court can infer from Defendant's conduct that it had knowledge that its conduct constituted infringement. The Hallmark Christmas movies, and the accompanying Hallmark Products, are extraordinarily popular, readily accessible to the public over the internet, and the marks Defendant used are identical to the HALLMARK Trademarks. Figures 1, 2, *supra*. [PSF 27-28]. At the very least, Defendant was acting with willful blindness and a reckless disregard of Plaintiff's trademark rights when it advertised, offered to sell, and sold the Counterfeit Products

using counterfeit reproductions of the HALLMARK Trademarks. *See Luxottica Grp. S.p.A. v. Chen*, 2017 U.S. Dist. LEXIS 29999, at *6 (N.D. Ill. Mar. 2, 2017). As such, Defendant's counterfeiting of the HALLMARK Trademarks had to be willful, because Defendant either had knowledge that its conduct constituted infringement, or at a minimum, showed a reckless disregard for Plaintiffs' trademark rights.

### C. Defendant Rendered it Impossible for Plaintiff to Determine the Scope of, or Prove, Actual Damages

Congress added 15 U.S.C. § 1117(c), the statutory damages provision, "because proving actual damages in counterfeiting cases is 'extremely difficult if not impossible.'" *Deckers Outdoor Corp. v. Australian Leather Pty*, No. 16 CV 3676, 2020 U.S. Dist. LEXIS 150474, at *12-13 (N.D. Ill. July 13, 2020) (citations omitted). This is because "a counterfeiter might hide, alter or destroy records, thus making it impossible for a plaintiff to determine the scope of, or be able to prove, actual damages." *Lorillard Tobacco Co.*, 2004 U.S. Dist. LEXIS 22563, at *10 (citations omitted).

During discovery, Defendant provided Plaintiff with deficient responses and minimal document production. [PSF 46]. In total, Defendant provided Plaintiff with 17 pages of document production, of which 9 pages consisted of the screenshot evidence originally filed as Plaintiff's Exhibit 3 to the Declaration of Stacey Howe [18]. [PSF 39-44]. This evidence showed that it sold and accepted money for 11 units of Counterfeit Product. [PSF 41]. However, Defendant did not indicate whether those were the totality of Defendant's sales of the Counterfeit Product, provide an accounting for funds restrained in its Walmart account, complete a search for other products that infringe the HALLMARK Trademarks, or provide Plaintiff a list of its other products that would allow Plaintiff to investigate whether Defendant's other products infringe the HALLMARK Trademarks. [PSF 42-46]. Defendant rendered it impossible for Plaintiff to prove the scope of

13

Defendant's infringement and actual damages; as such, Plaintiff should be entitled to the requested statutory damage award.

### D. Defendant's Wide Exposure Over the Internet Merits Statutory Damages Award

Defendant's ability to reach a vast customer base by advertising, offering for sale, and selling Counterfeit Products over the Internet through its Walmart store further merits the requested statutory damages award. Defendant reaches an enormous audience by selling its Counterfeit Product through Walmart; in 2024, Walmart reported its e-commerce sales surpassed $100 billion. [PSF 47]. Courts in this District have recognized the ability for e-commerce stores to reach a vast customer base and factored in this wide market exposure when calculating statutory damages. *See H-D U.S.A., LLC*, 2017 U.S. Dist. LEXIS 207613, at *11 ("the fact that defendant's counterfeiting took place online favors a higher statutory damages award because online counterfeiting can reach a much wider audience than counterfeiting through a physical store").

### E. The Statutory Damages Award Must Sufficiently Deter Defendant and Similar Online Sellers

The remedy imposed must provide a sufficient deterrent effect to ensure that the guilty party will not engage in further infringing conduct. *Sands, Taylor & Wood,* 34 F.3d at 1348. As such, the damages award should be large enough to deter Defendant from again engaging in infringing and counterfeiting behavior. Similarly, there is a substantial need to deter other online sellers from engaging in infringing and counterfeiting conduct. According to the Fiscal Year 2024 U.S. Customs and Border Protection ("CBP") Intellectual Property Seizure Statistics Report, CBP made 32.3 seizures of goods with intellectual property rights violations totaling over $5.4 billion, an increase of $2.6 billion from 2023. [PSF 48].

14

## IV. PLAINTIFF IS ENTITLED TO ATTORNEY FEES AND COSTS

The Lanham Act authorizes courts to, "in exceptional cases . . . award reasonable attorney fees to the prevailing party." 15 U.S.C. § 1117(a). The Seventh Circuit has said that "[d]istrict courts should use the broad equitable powers afforded them under § 1117(a)" to "properly serve[] the statute's goals of enforcing the trademark laws." *Te-Ta-Ma Truth Found.-Family of URI, Inc. v. World Church of the Creator*, 392 F.3d 248, 264-65 (7th Cir. 2004). Courts consider the losing party's "frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." *Curry v. Revolution Labs., LLC*, No. 17 C 2283, 2024 U.S. Dist. LEXIS 114989, at *6-*7 (N.D. Ill. June 30, 2024).

Here, Defendant willfully infringed the HALLMARK Trademarks and intended to palm off its Counterfeit Product as a genuine Hallmark Product. There is also a strong and compelling interest in deterring Defendant and other online e-commerce infringers and counterfeiters. For these reasons, this case is an exceptional one under the meaning of 15 U.S.C. § 1117(a), and Plaintiff respectfully requests the Court award Plaintiff attorney fees and costs.

## V. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that this Court enter an order granting summary judgment against Defendant for federal trademark infringement and counterfeiting (Count I) and false designation of origin (Count II). Plaintiff further requests the Court award Plaintiff $75,000 in statutory damages. Plaintiff also respectfully requests an award of attorney fees and costs associated with this action.

15

Dated this 9th day of July 2025.  Respectfully submitted,

/s/ Justin R. Gaudio
Amy C. Ziegler
Justin R. Gaudio
Jennifer V. Nacht
Madeline B. Halgren
Greer, Burns & Crain, Ltd.
200 West Madison Street, Suite 2100
Chicago, Illinois 60606
312.360.0080
312.360.9315 (facsimile)
aziegler@gbc.law
jgaudio@gbc.law
jnacht@gbc.law
mhalgren@gbc.law

*Counsel for Plaintiff*
*Hallmark Licensing, LLC*